[No. 23404.   Department One.   January 4, 1932.]

HAROLD R. HINES *et al., Respondents,* v. W. L. FOSTER *et al., Appellants.*

F. MARION READ, *Respondent,* v. W. L. FOSTER *et al., Appellants.*[1]

[1]Reported in 6 P. (2d) 597.

166

*Preston, Thorgrimson & Turner* and *Padden & Moriarty,* for appellants.

*Stratton & Kane, Elmer W. Leader,* and *L. B. Schwellenbach,* for respondents.

PARKER, J.—These two actions were commenced on the same day in the superior court for King county. They each involved damage claims arising out of the same collision between two automobiles at a highway intersection in that county. They were, by consent of all the parties, consolidated for trial in that court. We

shall hereafter refer to the automobile in which the plaintiffs were riding as the Hines car, and the automobile in which the defendants were riding as the Foster car.

The plaintiffs Hines and wife seek in their action recovery of damages for personal injuries suffered by Mrs. Hines and damages for injury to their clothing, claimed as the result of the negligent driving by the defendant Lloyd Foster of a car belonging to his father and mother, the defendants W. L. and Bertha Foster, in which they and his wife, the defendant Alice Foster, were riding with him; the car then being driven by him for the benefit of both families.

The defendants Lloyd Foster and wife responded to the complaint in the Hines action, denying negligence as therein charged against them, and by cross-complaint alleged negligence in the driving of the Hines car, resulting in personal injury to Mrs. Lloyd Foster, for which they seek recovery against Hines and wife. The defendants W. L. Foster and wife responded to the complaint in the Hines action, denying negligence as therein charged against them, and by cross-complaint alleged negligence in the driving of the Hines car, resulting in personal injuries to both of them and damage to their automobile, for which they seek recovery against Hines and wife.

The plaintiff Mrs. Read seeks in her action recovery of damages for personal injuries suffered by her and damages for injuries to her automobile, claimed as the result of the negligent driving of the Foster car, substantially as alleged in the Hines action. The defendants Lloyd Foster and wife responded to the complaint in the Read action by denials and cross-complaint, seeking damages from Mrs. Read in substance the same as in the Hines action. The defendants W. L. Foster and wife responded to the complaint in the

Read action by denials and cross-complaint, seeking damages from Mrs. Read in substance the same as in the Hines action.

The actions, being consolidated, proceeded to trial together in the superior court sitting with a jury, which trial resulted in verdict and judgment in the Hines action awarding to Hines and wife recovery of damages against the defendants, Fosters, in the sum of $750; and verdict and judgment in the Read action awarding to Mrs. Read recovery of damages against the defendants, Fosters, in the sum of $875. The defendants have appealed from both of these judgments to this court. Both appeals are before us upon one record and one set of briefs.

At the time in question, the north and south arterial highway between Sumner and Seattle, near the western edge of the city of Kent, was intersected at right angles by the east and west highway between Des Moines and Kent, which is not an arterial highway. At the east and west edges of the intersection, there are plain stop signs; and also at a short distance east and west from the intersection there are plain signs warning drivers approaching the intersection from those directions that they are approaching an arterial highway.

The Hines car was being driven north along the arterial highway by Harold Hines; his wife, and also Mrs. Read, the owner of the car, riding with him. The Foster car was being driven east along the other highway by Lloyd Foster; his wife, and also his father and mother, the owners of the car, riding with him. Both highways have paved roadways twenty feet wide.

The cars, being so driven, came into collision, at about eleven o'clock p. m., in the southeast quarter of the pavement intersection, and by the impact were thrown northeasterly, coming to rest off the pavement. Mrs. Hines was personally injured, and the clothing

of Mr. and Mrs. Hines considerably damaged. Mrs. Read was personally injured, and her car was damaged. Mrs. Lloyd Foster was personally injured. Mr. and Mrs. W. L. Foster were personally injured, and their car was damaged.

The evidence is conflicting touching the alleged negligence of the drivers of the respective cars. However, the jury could well believe from the evidence that the Foster car did not stop in obedience to the arterial highway warning and stop signs, and that it was being driven at an excessive and dangerous rate of speed, without yielding the right of way to the Hines car up to the moment of the collision, and that such negligence on the part of the driver of the Foster car was the sole, proximate cause of the accident; though the driver of the Hines car may have been technically negligent in slightly exceeding the statutory speed limit over the intersection.

It is first contended in behalf of the defendants that the trial court erred to their prejudice in permitting Mrs. Cummings to testify as to what she heard Mrs. Hines say soon after the accident. Mrs. Hines had been seriously injured, and was, for a short time after the accident, not only suffering severe physical pain, but was in a somewhat hysterical condition. About half an hour after the accident, Mrs. Hines, then reviving and overhearing a report of the accident being made in her presence to an officer by one of the Fosters, exclaimed: ''What were you driving so fast for, we were driving nice and slow.'' This is the expression Mrs. Cummings testified that Mrs. Hines then made. The argument is that this expression of Mrs. Hines was not properly admitted as a part of the *res gestae.*

It seems to us, in view of the short period elapsing following the accident up to the making of this statement by Mrs. Hines, her physical and mental condition

during that period, the fact that she was an actual participant in the accident, being seriously injured thereby, and her apparently spontaneous making of this statement, requires us to hold that the trial judge did not abuse his discretion in permitting this statement of Mrs. Hines to thus go to the jury. The following of our decisions, we think, well support this conclusion: *Dixon v. Northern Pac. R. Co.*, 37 Wash. 310, 79 Pac. 943, 107 Am. St. 810, 68 L. R. A. 895; *Walters v. Spokane International R. Co.*, 58 Wash. 293, 108 Pac. 593, 42 L. R. A. (N. S.) 917; *Britton v. Washington Water Power Co.*, 59 Wash. 440, 110 Pac. 20, 33 L. R. A. (N. S.) 109, 140 Am. St. 858; *State v. Goodwin*, 119 Wash. 135, 204 Pac. 769; *Lucchesi v. Reynolds,* 125 Wash. 352, 216 Pac. 12.

Counsel for the defendants cite and rely upon our decision in *Field v. North Coast Transportation Co.*, 164 Wash. 123, 2 P. (2d) 672. We think that decision is not controlling here. In that case, the question was as to whether the expression of a bystander's opinion that the driver was careless was a *res gestae* fact admissible in evidence; the expression not in any manner stating what the driver did or failed to do pointing to his being careless. The expression of Mrs. Hines, here in question, clearly meant that the speed of the Foster car was fast, and that the speed of the Hines car was slow.

It is next contended in behalf of the defendants that the trial court erred to their prejudice in permitting Mrs. Hines to testify as to the speed of the Foster car immediately preceding and at the time of the accident; the argument being that she did not have sufficient opportunity to observe the speed of the Foster car, during the short space of time she observed it, to testify as to its speed.

It is true that she had but a very short space of time

to judge of the speed of the Foster car, and it may be that her testimony wherein she said: "I should judge about fifty miles per hour," is entitled to but little weight, in so far as her testimony shows the speed of the car with any degree of accuracy; but it is manifest that she saw the Foster car approaching and come in collision with the Hines car under such conditions that she was able to judge its speed as being fast. It seems to us this contention goes more to the weight of Mrs. Hines' testimony than to its admissibility.

It is next contended in behalf of the defendants that the trial court erred to their prejudice in permitting counsel for the plaintiffs to put before the jury the suggestion that insurance companies were interested in the outcome of the case. We deem it sufficient to observe, in answer to this contention, that, whatever fault of counsel there may have been in this regard, the fault rests as much, if not more, upon counsel for the defendants. Indeed, the latter were the first to suggest insurance in the presence of the jury. Plainly, this is not prejudicial error entitling the defendants to a new trial. The trial judge, by his instructions to the jury, gave them to understand that insurance was to have no influence whatever upon them in reaching their verdict.

It is next contended in behalf of the defendants that the court erred in permitting a Miss Nelson, who was also riding in the Hines car, to testify: "Yes, sir, it is my belief that they were burning," referring to the lights on the Hines car. It is argued that she was not qualified to make any such statement, other than as a mere matter of guess. She testified, in substance, that, having ridden in the Hines car from Sumner, a distance of some ten miles, just preceding the accident, she would certainly have noticed the absence of lights on the Hines car in which she was riding, had they not

been burning. Clearly, we think her expression of "belief" under these circumstances was properly admitted.

It is next contended in behalf of the defendants that the court erred in permitting Mrs. Hines to testify as to her pain and suffering, resulting from her injury at the time of the accident. About all we can make out of this contention is that she should not have been permitted to so testify, because there was no express allegation in the complaint of pain and suffering on her part.

The complaint expressly alleged the nature of her physical injuries occurring as the result of the accident, which were manifestly such as to necessarily be followed by pain and suffering. Hence, she was properly permitted to so testify. *Robinson v. Marino*, 3 Wash. 434, 28 Pac. 752, 28 Am. St. 50; *Clukey v. Seattle Electric Co.*, 27 Wash. 70, 67 Pac. 379; *Fisher v. Anacortes*, 109 Wash. 191, 186 Pac. 271.

It is next contended in behalf of the defendants that the court erred in permitting cross-examination of W. L. Foster as to damage his car had received at a time prior to this accident. He had testified that, immediately before the accident, his car was reasonably worth fifteen hundred dollars. This cross-examination was manifestly for the purpose of lessening the force of that testimony. Clearly, opposing counsel had the right to so cross-examine him.

It is next contended in behalf of the defendants that the trial court erred to their prejudice in the use of the following language in its instructions to the jury: "The term 'burden of proof' means the burden of producing evidence which fairly preponderates over the opposing evidence." The trial judge had fully and fairly instructed the jury as to the burden of proof touching the affirmative claims of the respective par-

ties against each other, including the affirmative claims of contributory negligence. The argument is, in substance, that the word "producing," so used in this instruction, was prejudicial, in that it had the effect of barring the party having the affirmative of any issue from the benefit of testimony obtained on cross-examination.

It seems to us this contention is not well grounded. The instruction does not mean that the one having the affirmative of a particular issue has to produce evidence supporting his burden of proof by his own witnesses. Nor does it negative his right to produce evidence in support of his burden, by cross-examination of his opponent's witnesses. Nor does it negative his right to the benefit of any evidence coming from his opponent's witnesses or exhibits, which may aid him in supporting his burden of proof. Such evidence may partially, or even wholly, remove his burden of proof. *Prior v. Eggert,* 39 Wash. 481, 81 Pac. 929; *Atwood v. Washington Water Power Co.,* 71 Wash. 518, 128 Pac. 1065; *Brammer v. Percival,* 133 Wash. 126, 233 Pac. 311. We conclude that this instruction was not erroneous to the prejudice of defendants.

It is next contended in behalf of the defendants that the trial court erred to their prejudice in instructing the jury upon the statutory duty of a driver of an automobile approaching and entering a highway other than an arterial highway. The trial judge first gave to the jury an instruction reading in part as follows:

"You are instructed that under the laws of the state of Washington in force and effect at the time of the accident complained of in this case, it was the duty of the driver of any automobile entering an arterial highway to bring the said automobile to a full stop thereat when there were signs, posts or other markers direct-

ing or indicating, and to yield the right of way to vehicles on such arterial highway.''

This, manifestly, was intended to be in conformity to Laws of 1927, p. 801, § 40, reading as follows:

''The operator of any motor vehicle entering upon an arterial main traveled highway, from a public or private highway, road, street, way or driveway, shall yield the right of way to vehicles on such arterial highway and shall come to a full stop thereat when and where signs, posts or other markers so direct or indicate.'' Rem. 1927 Sup., § 6362-40.

The trial judge then gave to the jury another instruction, reading in part as follows:

''You are instructed that under the laws of the state of Washington in force and effect at the time of the accident complained of in this case, it was provided that when two cars simultaneously approach a given point within the intersection, it was the duty of the driver of the car approaching the intersection from the left to look out for and yield the right of way to the driver approaching from the right, regardless of which might first reach and enter the intersection.''

This, manifestly, was intended to be in conformity to the Laws of 1927, p. 806, § 41, subd. 14, reading as follows:

''Drivers, when approaching public highway intersections, shall look out for and give right of way to vehicles on their right, simultaneously approaching a given point within the. intersection, and whether such vehicles first enter and reach the intersection or not: *Provided,* This paragraph shall not apply to drivers on arterial highways.'' Rem. 1927 Sup., § 6362-41.

These two instructions were given by the trial judge seemingly upon the theory that they might be considered by the jury in the alternative; that is, if the jury should find that the north and south highway on which the Hines car was traveling was, in fact, an arterial

highway, then it should be guided by the instruction first above quoted; while, if the jury should find that the north and south highway upon which the Hines car was traveling was not an arterial highway, then the jury should be guided by the instruction last above quoted.

It is here argued that there was no contention made during the trial that the north and south highway was other than an arterial highway, and that therefore the giving of the instruction last above quoted was error to the prejudice of the defendants. By the pleadings, there was an issue made as to whether or not the north and south highway was, in fact, an arterial highway; but, for present purposes, we may assume that that issue entirely disappeared in the course of the trial, and that the contention of the defendants upon the trial was that their car, the Foster car, was actually stopped in obedience to the warning and stop signs.

However, we are unable to see that the giving of the instruction last above quoted was in the least prejudicial to the rights of the defendants. A critical reading of the language of § 40 of the statute, and the instruction given thereunder, plainly shows that they include all and more than the caution and right of way requirements of subd. 14 of § 41 of the statute. So the court did not, in the second above quoted instruction, state any requirement of the driver of the Foster car that was not required of him by § 40 of the statute and the instruction given thereunder. We conclude that the giving of the second instruction was not error prejudicial to the defendants.

■ It is finally contended in behalf of the defendants that the evidence conclusively shows that the driver of the Hines car was guilty of negligence which became a contributing, proximate cause of the accident; that the trial court should have so decided as a

matter of law and withdrawn the case from the consideration of the jury in so far as the plaintiffs' claims are concerned. This is rested upon the theory that the driver of the Hines car, by his own testimony, was shown to be guilty of negligence, in that he was driving over the intersection at a speed in excess of fifteen miles per hour, which, it is claimed, by reason of his obstructed view, was the statutory speed limit at that intersection.

Conceding, for present purposes, that the lawful speed of the Hines car was there so limited, there still remained the question as to whether or not the negligence of the driver of the Foster car or the negligence of the driver of the Hines car was the sole, proximate cause of the accident. We are of the opinion that, under all of the circumstances appearing, the jury could well conclude, as it manifestly did, that the negligence of the driver of the Foster car was the sole, proximate cause of the accident.

We conclude that the judgment must be affirmed. It is so ordered.

TOLMAN, C. J., HERMAN, MITCHELL, and BEELER, JJ., concur.