

# In the Missouri Court of Appeals
# Eastern District
## DIVISION FOUR

| | | |
|---|---|---|
| DENISE KAPPEL, ET AL., | ) | No. ED106216 |
| | ) | |
| Appellants, | ) | |
| | ) | Appeal from the Circuit Court of the |
| | ) | City of St. Louis |
| vs. | ) | Cause No. 1422-CC00747 |
| | ) | |
| FREDERIC PRATER, | ) | Honorable David L. Dowd |
| | ) | |
| Respondent. | ) | Filed: May 28, 2019 |

### OPINION

Denise Kappel ("Mrs. Kappel") and William Kappel ("Mr. Kappel") (collectively, "Appellants") appeal the judgment entered upon a jury verdict in Mrs. Kappel's favor on her negligence claim against Frederic Prater ("Respondent").[1] In their sole point on appeal, Appellants argue that the trial court abused its discretion in admitting a series of photographs showing the exterior of Mrs. Kappel's motor vehicle following the accident that preceded Mrs. Kappel's injuries. Appellants contend that the photographs were irrelevant, and that they were prejudiced because they received a reduced award of damages due to the inadmissible photographs. We affirm the trial court's judgment in regards to liability on Mrs. Kappel's negligence claim. However, finding that the trial court abused its discretion in admitting the

---

[1] Mrs. Kappel filed a negligence claim against Respondent relating to a vehicular accident; Mr. Kappel, Mrs. Kappel's husband, joined as a plaintiff with a loss of consortium claim.

photographs and that Appellants were prejudiced in that there is a reasonable tendency the erroneous admission of the photographs influenced the amount of damages that the jury awarded to Appellants, we reverse the judgment of the trial court regarding the damages awarded to Appellants and remand for a new trial solely on damages.

## I.      Factual and Procedural Background

On April 3, 2014, Mrs. Kappel filed a personal injury action against Respondent concerning a motor vehicle accident occurring in the City of St. Louis on May 8, 2009. A jury trial was conducted from October 23, 2017 to October 25, 2017, where the jury found in Mrs. Kappel's favor on her negligence claim, and awarded her $20,000 in damages.[2] The trial court entered judgment upon the jury's verdict on November 3, 2017.

The following facts were adduced at trial. On May 8, 2009, Mrs. Kappel was in St. Louis for a business trip and was involved in a vehicular accident while driving to meet her business partner and a client at a restaurant. She was stopped in the left turn lane at the intersection of Manchester Road and McCausland Avenue when Respondent rear-ended her rental vehicle. At trial, Mrs. Kappel testified that Respondent was traveling at an approximate speed of 35 miles per hour and the collision caused her vehicle to move and angle into the next lane. According to Respondent, he was only traveling at a speed of 15-20 miles per hour and "felt a jolt" when he hit the back of Mrs. Kappel's vehicle; Respondent's wife (a passenger in the vehicle) also categorized the collision as a "minor bump." After the accident, both Mrs. Kappel and Respondent moved their vehicles into a nearby lot and waited for police to arrive. Mrs. Kappel did not receive any medical attention at that time, nor did she take any pictures of her rental vehicle.

---

[2] Appellants requested a total of $950,000 in damages, including $650,000 for Mrs. Kappel's personal injuries and $300,000 for Mr. Kappel's loss of consortium claim.

2

The following day, Mrs. Kappel decided to cut her business trip short and return home to Chicago because she was experiencing pain following the accident. She returned the vehicle to the rental car agency and advised a representative that she had been in an accident. The representative informed Mrs. Kappel that she did not have to fill out any paperwork, and that the agency was already aware of the accident due to its communication with a representative for Respondent. Mrs. Kappel flew back to Chicago, and Mr. Kappel testified that he drove her to the emergency room that same day because she was experiencing pain down the left side of her neck, shoulder, and back. After several MRIs, her treating physician, Dr. Mohammad Alawad ("Dr. Alawad"), prescribed pain medication and physical therapy. Mrs. Kappel continued to take pain medication and participate in physical therapy, mainly doing exercises at home for her injuries. Her injuries did not improve after four years of physical therapy and pain treatment, so she saw two specialists, Dr. Brian Cole ("Dr. Cole") and Dr. Kathleen Weber ("Dr. Weber") for more definitive treatment; such treatment included steroid injections that Mrs. Kappel received in October of 2014. The injections failed to provide permanent relief, so she subsequently underwent shoulder surgery. Despite the surgery, Dr. Cole continued to administer steroid injections and ordered more physical therapy.

During pre-trial discovery, Appellants requested photographs of both Mrs. Kappel's rental vehicle and Respondent's vehicle. Respondent turned over colored photographs of Respondent's vehicle, but responded that he had no photographs of Mrs. Kappel's rental vehicle. Two years after discovery began, or seven years from the date of the accident, Respondent's counsel found the rental car agency's Xeroxed black-and-white copies of photographs of the rental vehicle in her file and sent them to Appellants' counsel.[3] Appellants filed a motion in

---

[3] Respondent's counsel provided the photographs to Appellants' counsel as soon as she was aware of them, and the trial court found that there was no issue with "counsel hiding the ball" in regards to the photographs.

limine to exclude the photographs of Mrs. Kappel's vehicle before trial, claiming that the evidence was not relevant and the late disclosure prejudiced Appellants because they could no longer request better quality photographs.[4] Appellants also claimed that the photographs would mislead the jury because of their poor quality. The trial court denied Appellants' motion in limine, but indicated that Appellants' counsel could address the jury about the late disclosure and poor quality of the photographs. Following this ruling, the parties commenced with trial.

At trial, Appellants objected to admission of the photographs of Mrs. Kappel's vehicle into evidence, specifically noting their extremely poor quality. Appellants also reasserted their argument that the photographs were irrelevant to the disputed facts and prejudiced Appellants because of Respondent's untimely production of the photographs. The trial court allowed the photographs to be admitted into evidence, but permitted Appellants' counsel to address the jury about the untimely production of the photographs and that the photographs of the vehicle used by Respondent were "actually enhanced from the black-and-white small grainy" pictures given to Appellants prior to trial. When asked on cross-examination if any of the photographs showed a "clear view of the full back end" of Mrs. Kappel's vehicle, Respondent answered that he did not "see a full back view." Respondent's counsel later mentioned the photographs several more times in her closing argument to reiterate that they were "objective evidence" of a minor impact.

In addition to Appellants' testimony, Appellants also called one expert, Dr. Randall Otto ("Dr. Otto"), to testify regarding the causation of Mrs. Kappel's injuries, and played three video depositions of Mrs. Kappel's treating physicians, Dr. Alawad, Dr. Weber, and Dr. Cole. Dr. Otto opined to a reasonable degree of medical certainty that the vehicular accident was a contributing factor to Mrs. Kappel's shoulder injury, and even though the accident took place five years prior

---

[4] The rental car agency had already disposed of the claim file that presumably held the original photographs.

to the shoulder surgery, that did not undermine his opinion on medical causation. The treating physicians gave testimony on Mrs. Kappel's treatment following the collision on May 8, 2009. Dr. Weber and Dr. Cole both testified in their depositions that they determined Mrs. Kappel would benefit from shoulder and back steroid injections. However, Mrs. Kappel was only temporarily relieved by the shoulder injections, so Dr. Cole performed left shoulder surgery to resolve the injury. Respondent called one expert witness, Dr. Richard Rende ("Dr. Rende"), who testified that Mrs. Kappel's injuries would have been resolved within 8-12 weeks after the accident. Respondent and his wife also testified that the collision seemed to be minor.

Following the trial, the jury found in Mrs. Kappel's favor on her negligence claim, and awarded her $20,000 in damages.[5] The trial court entered judgment upon the jury's verdict on November 3, 2017. Appellants filed a motion for a new trial and an alternative motion for additur, arguing that the photographs of Mrs. Kappel's vehicle were erroneously admitted into evidence; both motions were denied on December 14, 2017.

This appeal follows.

## II.    Standard of Review

"A trial court has broad discretion in admitting or excluding evidence, and we will reverse the trial court's decision only if the court clearly abused its discretion." *Ball v. Allied Physicians Group, L.L.C.*, 548 S.W.3d 373, 384 (Mo. App. E.D. 2018). "A trial court abuses its discretion when a ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration." *Wilson v. P.B. Patel, M.D., P.C.*, 517 S.W.3d 520, 523 (Mo. banc 2017). "An abuse of discretion compels reversal only 'if the prejudice resulting

---

[5] The jury also found that Mr. Kappel did not sustain damages as a direct result of Mrs. Kappel's injury.

from the improper admission of evidence is outcome-determinative.'" *Bowolak v. Mercy East Communities*, 452 S.W.3d 688, 703 (Mo. App. E.D. 2014) (quoting *Williams v. Trans State Airlines, Inc.*, 281 S.W.3d 854, 872 (Mo. App. E.D. 2009). "Further, we cannot reverse a judgment unless we find the error committed materially affected the merits of the action." *Whitworth v. Jones*, 41 S.W.3d 625, 627 (Mo. App. E.D. 2001).

### III. Discussion

Appellants argue in their sole point on appeal that the trial court abused its discretion in admitting photographs of Mrs. Kappel's vehicle into evidence. Specifically, Appellants argue that the photographs were irrelevant and misled the jury, and that they were prejudiced in that they received a reduced award of damages because of the inadmissible photographs.

"Relevancy is the key criterion for admission of evidence, and the court must find evidence both logically and legally relevant in order to admit it." *Kroeger-Eberhart v. Eberhart*, 254 S.W.3d 38, 43 (Mo. App. E.D. 2007). "Evidence is logically relevant if such evidence tends to make the existence of any material fact more or less probable than it would be without the evidence." *Id.* "Evidence is legally relevant if its probative value is greater than its costs, including the prejudicial effect on the jury, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." *Ball,* 548 S.W.3d at 385. "The trial court must measure the usefulness of the evidence against its cost, and if the cost outweighs the usefulness, then the evidence is not legally relevant, and the court should exclude it." *Kroeger-Eberhart*, 254 S.W.3d at 43. A court must determine legal relevance in consideration with the logical relevance, or probativeness, of the evidence. *Cox v. Kansas City Chiefs Football Club, Inc.*, 473 S.W.3d 107, 122 (Mo. banc 2015).

After reviewing the record, we find that the photographs of Mrs. Kappel's vehicle were neither logically nor legally relevant. The photographs were not logically relevant and should have been excluded because they did not contribute to the jury's understanding of the disputed fact of whether the impact of the collision could have caused or contributed to cause Mrs. Kappel's injuries. *See Jordan v. Abernathy*, 845 S.W.2d 86, 88 (Mo. App. E.D. 1993); *see also Randall v. Steelman,* 294 S.W.2d 588, 594 (Mo. App. E.D. 1956) (stating that "where a photograph is in no way instructive or calculated to assist the jury it should be excluded"); *Gignoux v. St. Louis Pub. Serv. Co.,* 180 S.W.2d 784, 786 (Mo. App. E.D. 1944) (noting that photographs taken in connection with witness testimony should be useful in clarifying the negligence at issue in order to provide a jury with a "clearer understanding of the physical facts"). "Photographic evidence must be practical, instructive, and calculated to assist both the jury and the court in understanding the case." *Jordan*, 845 S.W.2d at 88.

The photographs allegedly showing the physical damage to Mrs. Kappel's vehicle could not assist the jury in determining (a) whether Mrs. Kappel was injured as a result of the accident, or (b) the extent to which she was injured. The photographs of Mrs. Kappel's vehicle that were admitted into evidence could not have aided the jury in deciding the specific claims at issue in this case because the photographs were so grainy and pixelated that it is indeterminable what they depict. The black-and-white photographs (which were distorted because they had been enhanced) had such little definition and clarity that they failed to actually show what physical damage was done to Mrs. Kappel's vehicle. Respondent testified that he was unable to identify what the photographs depicted;[6] as even Respondent (a person who was familiar with the

---

[6] On cross-examination, Appellants' counsel asked Respondent if he had "any idea of what we're looking at." Respondent replied, "It looks like it could be a trunk, but I'm not sure." Later in the same line of questioning, Respondent admitted that he did not "see a full back view" of Mrs. Kappel's vehicle in any of the photographs.

7

collision) could not recognize what was shown in the photographs, they likely would have been unhelpful to the jury in determining whether Mrs. Kappel sustained her claimed injuries as a result of the accident. *See Stogsdill v. Gen. Am. Life Ins. Co.,* 541 S.W.2d 696, 701 (Mo. App. E.D. 1976) (stating that "[t]he photographs … must fairly and accurately reflect the situation, and must be likely to be of sufficient assistance to warrant their use").

There was no testimony offered at trial that the collision could not have caused or contributed to cause Mrs. Kappel's complained-of injuries, but there was ample testimony given indicating that the accident could have and did cause or contribute to cause her injuries. Mrs. Kappel explained in detail the treatment and physical therapy she received for her shoulder and back injuries; Appellants also described for the jury the extent of Mrs. Kappel's injuries and how it affected their everyday life. The jury also heard from Mrs. Kappel's three treating physicians and an expert witness who testified that the collision caused or contributed to cause her injuries. Respondent's expert witness, Dr. Rende, did not testify that the collision could not have caused or contributed to cause Mrs. Kappel's injuries,[7] however, he expressed the opinion that the injuries he believed Mrs. Kappel sustained as a result of the collision would have resolved within 8-12 weeks. Finally, Respondent also testified that the collision produced minimal damage to the parties' vehicles, and his wife testified that she felt just a "minor bump"; neither testified, nor would have been qualified to testify, that Mrs. Kappel's injuries could not have resulted from the collision. However, because it is indeterminable what the photographs of Mrs. Kappel's vehicle

---

[7] When asked if Mrs. Kappel's complained-of injuries were causally connected to the accident, Dr. Rende specifically answered, "Well, I didn't see any evidence of a shoulder injury [(from the MRI scans)]. Five years later, the patient complained of shoulder pain and stiffness. Ultimately, it turned out to be adhesive capsulitis. And it's well-known that adhesive capsulitis is not [an] injury related disease." However, Dr. Rende later went on to state that "You can see it [(adhesive capsulitis)] in trauma; but when I say in trauma, it has to be significant trauma requiring immobilization in a sling for long periods of time...." Dr. Rende never stated that "the diagnosis of adhesive capsulitis in the shoulder and accompanying shoulder surgery occurring five years later were unrelated to the accident," as Respondent states in his brief.

actually depict, they could not support any testimony regarding either the alleged damage to the vehicle or Mrs. Kappel's injuries. In sum, the photographs of Mrs. Kappel's vehicle were not "practical, instructive, and calculated to assist both the jury and the court in understanding the case," as their poor quality precluded any such assistance. *See Jordan*, 845 S.W.2d at 88. Thus, because the photographs could not aid the jury in determining whether the collision caused or contributed to cause Mrs. Kappel's injuries, they were not logically relevant.

Furthermore, the photographs were also not legally relevant because their potential to confuse the issues and mislead the jury outweighed any probative value that they might have. *See Haffey v. Generac Portable Prods., L.L.C.,* 171 S.W.3d 805, 809 (Mo. App. S.D. 2005); *see also Switzer v. Switzer,* 373 S.W.2d 930, 939 (Mo. banc 1964) (finding that "evidence that throws no light on the controversy should be excluded as it tends to confuse the issues and operate to prejudice a party before the jury"). The photographs of the exterior of Mrs. Kappel's vehicle in this case likely could have caused the jury to focus on the allegedly-minor damage to the vehicle instead of the physical injuries that Mrs. Kappel sustained—which was the central issue in the case. "Irrelevant and immaterial evidence is excluded because its admission has a tendency to draw the jury's attention away from the issues it has been called to resolve." *Barr v. Plastic Surgery Consultants, Ltd.,* 760 S.W.2d 585, 588 (Mo. App. E.D. 1988). Moreover, the photographs, which Respondent and his counsel contended showed only facial damage to Mrs. Kappel's vehicle, could easily mislead jurors into concluding that Mrs. Kappel could not have sustained her claimed injuries (which allegedly required substantial medical treatment) as a result of the accident. And, as indicated above, the photographs of Mrs. Kappel's vehicle had little-to-no probative value in this case because they were so grainy and pixelated that they were not informative as to the actual damage to the vehicle or to whether the collision could have caused

or contributed to cause Mrs. Kappel's injuries. Thus, because the photographs' costs (specifically, the likelihood that the photographs would confuse the issues and mislead the jury) outweighed their probative value, the photographs were not legally relevant. We therefore find that the trial court abused its discretion in admitting the photographs of Mrs. Kappel's vehicle into evidence.

We further find that the trial court's erroneous admission of the photographs into evidence was prejudicial because it was outcome-determinative and materially affected the merits of the case. *Whitworth*, 41 S.W.3d at 627. "A determination of prejudice by the erroneous admission of evidence depends largely upon the facts and circumstances of the particular case." *Kearbey v. Wichita Se. Kan.*, 240 S.W.3d 175, 184 (Mo. App. W.D. 2007). In determining whether a party was prejudiced, the question is whether the "erroneously admitted evidence had any reasonable tendency to influence the verdict of the jury." *Id.* "Evidence is prejudicial if it tends to lead the jury to decide the case on some basis other than the established propositions in the case." *Urbach v. Okonite Company*, 514 S.W.3d 653, 660 (Mo. App. E.D. 2017).

The trial court denied Appellants' motion in limine to exclude the photographs, but in an effort to lessen their prejudicial effect, allowed Appellants' counsel to address the jury explaining, "However, [Appellants' counsel] … will be able to make an explanatory statement to the jury as to – without any inflammatory comments – about [why] this evidence was hidden from us or anything along those lines, sort of an explanatory statement as to why the jury is looking at poor quality pictures." Even though the jury heard why the photographs were poor quality, the admission of the photographs allowed the jury to use this evidence when deliberating on the issues of whether the collision caused or contributed to cause Mrs. Kappel's injuries and the extent to which the collision caused or contributed to cause those injuries. Therefore,

10

counsel's statement could not have lessened the prejudicial effect of the improperly-admitted evidence.

Unlike in *Zempel v. Slater*, 182 S.W.3d 609, 615–16 (Mo. App. E.D. 2005), where this Court found that the prejudice resulting from the admission of evidence was sufficiently lessened by the arguments of counsel, other evidence, and the limiting instruction, here, no limiting instruction or additional testimony was provided on the issue of whether the minimal damage allegedly depicted in the photographs could not have caused or contributed to cause Mrs. Kappel's injuries. Respondent's counsel also heavily relied on the photographs during her closing argument. Rather than focusing on the plentiful testimony offered at trial regarding whether the collision could have caused or contributed to cause Mrs. Kappel's injuries and the extent of those injuries, Respondent's attorney argued that the photographs of Mrs. Kappel's vehicle were indicative of a very minor accident, and thus, Mrs. Kappel could not have sustained the alleged injuries from the collision. Respondent's counsel told the jury during her closing argument that the expert and witness testimony were "not all you have to go on" because the photographs were "objective evidence." She again mentioned the photographs when explaining to the jury that there is only one possible "common sense" story, and the photographs, "granted not great quality," tell the jury that the accident described by Mrs. Kappel does not "jive with the accident shown by the photographs." Respondent's counsel referred to the vague and grainy photographs to substantiate testimony from Respondent and his wife that the impact was minor, and she further argued that the "car accident didn't cause the damage that plaintiffs are claiming here."

We find that such use of the erroneously-admitted photographs had a reasonable tendency to influence the jury's award of damages, as the jury awarded Appellants only a small portion of

11

the total medical bills admitted at trial despite finding Respondent liable. *See Kearbey,* 240 S.W.3d at 184; *Eisenmann v. Podhorn*, 528 S.W.3d 22, 38 (Mo. App. E.D. 2017) (finding that "juror confusion materially affected the case as it led to inconsistent verdicts"). However, this Court does not "possess the insight of the Master Clocksmith that would enable a court to peer into the works of the jury's collective mind and say which wheels were turning when the verdict was struck." *Eisenmann*, 528 S.W.3d at 39. "[T]hus, we must refrain from speculating as to what verdict the jury intended to enter." *Id.* Nonetheless, the improperly-admitted photographs allowed Respondent to downplay Mrs. Kappel's injuries to the extent that the jury might conclude that Mrs. Kappel could not have suffered significant injuries as a result of the accident simply because her vehicle allegedly appeared to sustain only minor physical damage. As the trial court's erroneous admission of the photographs of Mrs. Kappel's vehicle had a reasonable tendency to influence the jury's award of damages, it was therefore prejudicial.

Finding that the trial court abused its discretion in admitting the photographs of Mrs. Kappel's vehicle and that such admission was prejudicial, we grant Appellants' point on appeal.

### IV. Conclusion

We find that the trial court abused its discretion in allowing the photographs of Mrs. Kappel's vehicle to be admitted into evidence because the photographs were not logically or legally relevant. Furthermore, we find that the erroneous admission of the photographs was prejudicial because it had a reasonable tendency to influence the jury's award of damages, as the jury was allowed to use these photographs in determining whether the collision could have caused or contributed to cause Mrs. Kappel's injuries to the extent she claimed. Because the trial court's error only affected the amount of damages awarded to Appellants, and not liability (as the jury found Respondent liable even with the erroneously-admitted photographs), we affirm the

trial court's judgment in regards to liability, but reverse the trial court's judgment in regards to

the damages awarded to Appellants, and remand the cause for a new trial solely on damages.[8]

_____
Colleen Dolan, Judge

Kurt S. Odenwald, P.J., concurs.
Gary M. Gaertner, Jr., J., concurs.

---

[8] *See Eisenmann,* 528 S.W.3d at 39 (reversing the trial court's decision and remanding for a new trial on damages where the jury had found the defendant liable, but where damages were incorrectly determined by the jury because of trial court error) (citing *Dierker Assocs. D.C. v. Gillis,* 859 S.W.2d 737, 750 (Mo. App. E.D. 1993) ("If the liability issue was fairly tried and there is error on the issue of damages, we must sustain the finding of liability and remand the case for retrial on the issue of damages only.")); *Tune v. Synergy Gas Corp.,* 883 S.W.2d 10, 22 (Mo. banc 1994) ("This error goes only to damages and does not affect liability. We reverse and remand for a new trial on damages only. No new trial shall be ordered as to issues in which no error appears."); Rule 84.14. In this case, the trial court's error in admitting the photographs of Mrs. Kappel's vehicle into evidence does not affect the jury's finding of liability on Mrs. Kappel's negligence claim.